167 N.J. Super. 35 (1979)
400 A.2d 502
CAROL DEMECH, APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR AND INDUSTRY AND THE GREAT ATLANTIC AND PACIFIC TEA COMPANY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 13, 1979.
Decided March 16, 1979.
*36 Before Judges FRITZ and MORGAN.
Ms. Jane B. Terpstra, Acting Director, Legal Aid Society of Mercer County, attorney for appellant (Mr. Gerald B. Schenkman, of counsel; Mr. Richard Dana Krebs, on the brief).
Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent Board of Review (Mr. Michael S. Bokar, Deputy Attorney General, of counsel; Mr. Mark I. Siman, Deputy Attorney General, on the statement).
Messrs. Brandt, Haughey, Penberthy & Lewis, attorneys for respondent A & P (Mr. Gerald E. Haughey, on the brief).
The opinion of the court was delivered by MORGAN, J.A.D.
Enraged by a coemployee's persistent, unremitting and sexually offensive verbal and physical abuse, claimant seized the nearest object at hand, a 25-pound roast of beef, and hurled it at her tormenter. This conduct resulted in her discharge from employment. Following application for *37 unemployment compensation benefits, she was found guilty of misconduct, disqualified for benefits for the six weeks following her discharge and ordered to refund $492 in benefits she had previously received. She appeals.
The facts recounted by the Board of Review in the proceedings on remand establish that claimant was employed for nine months by the Great Atlantic & Pacific Company (A & P) as a meat wrapper. In July 1976 she was assigned to the Mount Holly store for a three-week stint of temporary duty. Early on the first day of the second week of that assignment, a meat cutter, Al Hahn, who had not been on duty the previous week, introduced himself to her by suddenly grabbing her, pushing her against a wall and, while holding a knife with a 10-12-inch blade, issuing her an invitation to a sexual encounter in obscene and unrepeatable language. She was released only when another accidentally intruded on the scene and admonished Hahn to "knock it off." Hahn, however, remained undaunted. Throughout the remainder of that week and Monday of the next week Hahn repeatedly directed a flow of obscene remarks to her, renewed invitations to sexual adventures, normal and perverse, without, however, physically assaulting her.
At some time during the week claimant complained to the delicatessen manager, a female, who informed her that Hahn always behaved like that and counselled her to get used to it. Claimant testified that she did not complain to the store manager because she had observed his presence during some of these remarks to which he responded only with a giggle. She felt that in these circumstances a complaint to him would have been futile.
On August 2, 1976, the day of the incident which resulted in her discharge, the meat department was busy. Several customers were waiting for orders to be filled. One such customer had been waiting for some time and claimant apparently conveyed the customer's impatience to Hahn. He responded to this advice with yet more obscene and unrepeatable language, with the result that, in a rage over the *38 cumulative effect of her experience during the week, she heaved the meat roast at him. Hahn was not injured.
Hahn denied use of offensive language and denied the assault. He was at a loss to explain claimant's sudden violence. Despite that no one from the A & P testified to hearing obscene language from Hahn, the Board of Review expressly found "that the claimant was subjected to vile and salacious language."
Nonetheless, it concluded that her act of assaulting Hahn constituted misconduct within the meaning of N.J.S.A. 43:21-5(b), thus disqualifying her from benefits for the statutory period. The Board apparently took the view that concluding otherwise would condone violence as an appropriate response to verbal conduct. It noted that claimant had alternative means of relief available to her. She could have complained to the store manager despite his lack of action during the times he was present. The Board reasoned that on the first day when she was physically assaulted she could not have known of his complaisant and accepting attitude toward Hahn's depredations. Further, she could have lodged a union complaint, particularly since she had been successful with a previous and unrelated grievance. She could have taken her problem to personnel. The Board concluded that "her action in striking the meat cutter on August 2, 1976 was a disregard of the standards of behavior which the employer has the right to expect of its employees." Accordingly, it labeled her behavior as misconduct and worthy of a partial disqualification for benefits.
Misconduct is a term undefined in the statute. Judicial attempts to imbue the term with substantive meaning have, however, insisted upon the ingredients of wilfulness, deliberateness and intention if an employee's act is to qualify as misconduct. See Beaunit Mills v. Employment Security Div., 43 N.J. Super. 172, 183 (App. Div. 1956), certif. den. 23 N.J. 579 (1957). Inadvertent or unintentional acts, or simple neglectful conduct not amounting to *39 a wanton disregard of consequences, will not so qualify. Id. at 182.
At issue in this appeal is an isolated act of minor violence not intended to injure, committed in a spontaneous response to the cumulative effect of a persistent course of highly provocative verbal and physical conduct. We cannot, in the specific circumstances of this case, agree with the Board of Review's conclusion that claimant's response constituted disqualifying misconduct within the meaning of the unemployment compensation law.
The reasons underlying this conclusion are several: (1) claimant's act was the result of another's inexcusable and highly provocative conduct; (2) the response thereto was an unthinking, spontaneous expression of provoked rage; (3) the physical violence inherent in claimant's act was minimal in nature, not intended to injure and did not in fact inflict injury.
It is the combined effect of these factors which has compelled our conclusion. The absence of any one of them might well have dictated a different result. We stress that each case, requiring an evaluation of behavior as possible misconduct for partial disqualification under the unemployment compensation law, must be decided on its own necessarily distinctive facts. Minor distinctions can, and frequently do, yield diametrically opposite results. We must frankly recognize that in all such cases it is the subjective reaction of the factfinder to a complex of factual circumstances that determines whether given behavior is to be characterized as misconduct.
Hence, in a case fairly close on its facts to the present one, Guest v. Unemployment Comp. Act Admr., 22 Conn. Supp. 458, 174 A.2d 545 (Super. Ct. 1961), which involved a claimant's limited physical response to his supervisor's remark calling him a "queer," the court, emphasizing the spontaneous character of the response, held that although technically a battery and not blameless, it could not be considered misconduct within the meaning of the unemployment *40 compensation law. Where the essential elements giving rise to the assault are somewhat, but not dramatically different, the contrary result was reached. See Beville v. Commonwealth, Unemp. Comp. Bd. of Rev., 15 Pa. Cmwlth. Ct. 371, 327 A.2d 197 (1974).
We should not be understood as condoning violence in any degree. We do not. We here hold only that in the specific circumstances of this case, the single episode of spontaneous minor violence made in response to clearly provocative conduct cannot be considered misconduct in an unemployment compensation context.
Claimant's failure to complain to the store manager or to personnel, a matter which figured prominently in the Board's conclusion, is of minor consequence in the given circumstances. We stress that claimant did not deliberately choose violent over nonviolent means to deal with her tormenter. When advised by the delicatessen manager, a woman, to get used to Hahn's customary behavior, she obviously tried to do so. According to her testimony, she felt that she could absorb his abuse over the relatively brief period of time that she was scheduled to work with him. That she lacked the capacity to do so bespeaks understandable misjudgment rather than a preference for violence. Inherent in the very spontaneity of her act was the impossibility of her then seeking aid from her superiors; once she lost control, it was too late. Hence, her failure to speak to the manager after the first incident (before she knew he would be unsympathetic) cannot be the basis for the disqualification because at that time she could not have known that Hahn would be as persistently offensive as he turned out to be and could not have known that she would ultimately lose personal control.
Nor can the precepts of the criminal law be facilely imported into the unemployment compensation area as respondent employer seeks to do. Although principles used to determine criminal responsibility provide a good guide to what will be considered misconduct under the Unemployment *41 Compensation Act, they are not an invariably accurate one. The interests to be protected by means of the criminal law differ considerably from the objectives of the unemployment compensation law.[1] The fact that claimant's act may have constituted a technical battery does not, ipso facto, convert that act into one of misconduct under N.J.S.A. 43:21-5(b). The same would be true of the virtually ceremonial slap on the face of one offensively pressing an overture to sexual congress. Even a swift kick to the shins of one making such overtures might reasonably be viewed by a factfinder as falling somewhat short of the misconduct envisioned in the unemployment compensation act, despite the perpetrator's possible criminal liability for a technical battery, assuming a victim could be found to press such a charge.
In summary, one need not condone claimant's conduct to understand, with some compassion, its all too human quality. We do not expect ideal restraint from employees; perfection is not the standard. All that the statute undertakes to penalize is deliberate and wilful disregard of standards of conduct an employer has a right to expect. Claimant's conduct, although not perfect, did not, in our view, and under the peculiar circumstances of this case, fall short of that standard.
Reversed and remanded for further proceedings consistent with this position.
FRITZ, P.J.A.D. (concurring).
I am unalterably opposed to any proposition of law that appears to condone violence, *42 whether it be an absolute act or a responsive one and irrespective of motivation. Other than in matters of self-defense (in which my concerns respecting acts of violence are no less but in which I recognize that there perhaps a fitting response will serve as well to allay continuing acts of violence), I can conjure up no conceivable "justification" for a violent act.
But in the within matter I am wholly satisfied that, while Carol Demech was wrong to do what she did and only fortuity dictated the results of her conduct, her act was spontaneous, produced, at long last and inexorably, by the dirty mouth of Hahn, and entirely understandable. In the particular circumstances of this matter thus viewed, I agree with Judge Morgan that the Legislature could not have intended the policy imbalance which would be imposed by the disqualification penalty adjudged below.
NOTES
[1] For example, we have no doubt but that Hahn's continued course of provocative sexual harassment created an intolerable working milieu for claimant. Had she voluntarily left work on that account, she might well have established her eligibility for unemployment compensation on that basis. See, Associated Utility Services v. Bd. of Review, 131 N.J. Super. 584 (App. Div. 1974). She should not be penalized for attempting to remain employed, notwithstanding these conditions. Such conduct is consistent with an essential aim of the unemployment compensation act, retention of employment.