281 N.J. Super. 426 (1995)
658 A.2d 310
MARIO A. SMITH, PETITIONER-APPELLANT,
v.
BOARD OF REVIEW, DEPARTMENT OF LABOR, STATE OF NEW JERSEY, RESPONDENT-RESPONDENT, AND ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1995.
Decided May 18, 1995.
*427 Before Judges PETRELLA, BROCHIN and CUFF.
Richard J. Bennett argued the cause for appellant (Middlesex County Legal Services Corporation, attorney; Mr. Bennett, on the brief).
Michael S. Bokar, Senior Deputy Attorney General, argued the cause for respondent Board of Review (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Bokar, on the brief).
No brief was filed on behalf of respondent Robert Wood Johnson University Hospital.
PER CURIAM.
This appeal implicates the six-week benefit disqualification under the unemployment compensation laws for work-related misconduct *428 by a hospital employee. The Board of Review (Board) upheld the determination of the Appeal Tribunal which found petitioner Mario A. Smith disqualified for benefits under N.J.S.A. 43:21-5(b) for the six-week period from June 20 through July 31, 1993. We affirm.
On appeal, Smith argues that his termination from employment, which was based upon his commission of a single, isolated, negligent act does not, per se, constitute a discharge for "misconduct" as that term is defined for unemployment compensation purposes, even if the possible consequences of the act may be severe.[1]
The essential facts are not disputed. Smith had been employed by Robert Wood Johnson University Hospital for a period of about two years in the capacity of a host, described as an employee in the nature of an orderly who "deals directly with the patient's needs and the floor needs" and who "sets a hotel environment for the patients." On June 21, 1993, Smith brought food to a pre-operative patient after he had been instructed by a nurse, on a physician's instructions, that the patient was not to be fed. The patient had just recently been admitted as a special case. Orders had just been received from a doctor for the patient. Because of this the nurse went to Smith to tell him directly that the patient was not to be fed. This was before the patient was told of the forthcoming surgery or the customary notice was put on the bed.
The hospital's assistant director of Environmental Whole Services explained that a patient who eats before surgery can regurgitate and choke on the food during anesthesia. The assistant *429 director also said that the first thing he tells each new employee in his department is the necessity of not feeding an "NPO"[2] patient. He indicated that Smith was discharged due to the fact that Smith put a patient's life in danger by his actions.
Two written statements were submitted into evidence at the hearing before the appeals examiner. One statement concerning the incident was prepared by the nurse in charge and another by Smith's supervisor. The nurse in charge noted in her statement that Smith was "instructed not to give [the patient] his dinner tray" and Smith replied, "okay." When a nurse found the patient eating and asked Smith why he violated the instructions for this NPO patient, Smith replied, "fuck this place" and walked off the floor without telling anyone where he was going. Smith's supervisor was advised of the incident by the nurse in charge. When the supervisor tried to question Smith about the matter he refused to discuss it, saying he was "fed up with the way he was treated in the hospital." Security was then called and Smith was escorted from the building.
The next day the assistant director asked Smith to come to his office. Smith told him at the meeting that "he was going through a lot of personal problems" and had "brought them to work with him" the day before. Smith admitted at the hearing that he had been told by the nurse earlier in the evening on June 21 that the patient, who had just been brought into the hospital, was to be operated on and should not be fed. He also conceded that the assistant director had emphasized to him when he was hired the importance of not feeding NPO patients. Smith said that he forgot and he had been feeling "real frustrated" and "a little confused and tired" because of personal and work-related problems. In describing how his personal problems affected him and his performance of the job that day Smith testified:

*430 I've been receiving letters from child support for a child and I haven't been able to take a blood test or anything and they just sent me letters telling me to pay child support of $93.00 a week. Which I only bring home $340.00 every two weeks. I felt frustrated with that part of my life, I was real frustrated with the job. With different situations with dealing with the nurses, my supervisors, the patients, the family members, doctors and I can go on and on and on. I was real frustrated and a little confused and tired.
He also added that when he brought the dinner tray into the patient's room, an unnamed nurse's aide asked him to leave it on an empty bed next to the patient. Smith said he did this and then left the room. However, when questioned by the hospital's representative (the assistant director) at the hearing as to why, when he had questioned Smith the next day about the incident Smith did not tell him about a nurse's aide telling him to put the tray on the bed, Smith responded that he didn't really feel it was important at that point and he did not feel that the hospital personnel or the institution were open-minded toward him and his job and he had been feeling abandoned ever since he was in the department. He said he felt that the institution only cared about making money.
The Appeal Tribunal concluded that Smith's actions in giving a tray of food to a patient who was scheduled for surgery, "which was the cause of discharge, was a willful disregard of the employer's best interest, therefore the statutory penalty must be imposed." Smith was disqualified for six weeks because he was discharged for misconduct connected with his work. The Board affirmed based on the findings and conclusions of the Appeal Tribunal.
N.J.S.A. 43:21-5(b) sets forth a disqualification for unemployment compensation benefits as follows:
For the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the five weeks immediately following that week (in addition to the waiting period), as determined in each case....
We attempted to define the abstract term misconduct in general and non-exclusive terms in Beaunit Mills v. Division of Employment Security, 43 N.J. Super. 172, 183, 128 A.2d 20 (App.Div. 1956), as:

*431 Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be [1] an act of wanton or willful disregard of the employer's interest, [2] a deliberate violation of the employer's rules, [3] a disregard of standards of behavior which the employer has the right to expect of his employee, or [4] negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or [5] show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. [Emphasis supplied.]
This definition sets forth alternative bases for findings of misconduct and does not require multiple acts to constitute the statutory misconduct. The statutory misconduct is also less than the "gross misconduct" defined further on in N.J.S.A. 43:21-5(b) as "an act punishable as a crime of the first, second, third or fourth degree...."
Thus, misconduct has been held to include deliberate refusal to comply with an employer's reasonable work rules. Broderick v. Board of Review, 133 N.J. Super. 30, 335 A.2d 67 (App.Div. 1975). However, an isolated act of minor significance which might justify dismissal for cause, may not always qualify as misconduct such as would of necessity implicate the six-week disqualification period. In Demech v. Board of Review, 167 N.J. Super. 35, 39, 400 A.2d 502 (App.Div. 1979), the disqualification for benefits was not applied to a claimant engaged in "an isolated act of minor violence not intended to injure, committed in a spontaneous response to the cumulative effect of a persistent course of highly provocative verbal and physical conduct." Here of course, the action was not minor, but had the potential of being life-threatening, and was not in response to any provocative action.
Although our cases have not dealt directly with the issue of isolated misconduct in a health care or professional context, cases from other jurisdictions have emphasized the importance of strict compliance with rules in the health care field. Thus, disqualifications for misconduct have been applied stringently regarding employees in the health care field who act in a manner that could threaten the life or well-being of a patient. Although we recognize that as a host or orderly Smith was not a licensed health care *432 professional, he nonetheless had significant responsibility with respect to his direct contact with patients.
In Ress v. Abbott Northwestern Hospital, Inc., 448 N.W.2d 519 (Minn. 1989), the misconduct disqualification under the unemployment compensation statutes was applied to a nurse who initiated an unauthorized emergency medical procedure. The Minnesota Supreme Court rejected the claimant's defense that he should be excused because his actions were the result of "good-faith errors in judgment." The court observed that the nurse's actions contravened established procedures, exposed the patient to serious harm and also exposed the hospital to a malpractice claim.
Moreover, if there is one unique area of employment law where strict compliance with protocol and militarylike discipline is required, it is in the medical field. Human lives depend on it, and those not trained as physicians cannot be given the encouragement to act as though they were so trained.
[448 N.W.2d at 525.]
Thus, even "a single incident can constitute misconduct." Ibid.
To like effect is Myers v. Commonwealth, Bd. of Review, 88 Pa.Cmwlth. 399, 490 A.2d 18 (1985), where Pennsylvania's willful misconduct disqualification was applied to a nurse who improperly administered medication without checking the patient's medical chart. The court indicated that "an inadvertent violation of an employer's rule does not necessarily constitute willful misconduct." Nevertheless, the court refused to recognize an "inadvertence exception" to the misconduct disqualification where health care professionals violated established rules. Id. at 20. We thoroughly agree with that reasoning and additionally hold that where a hospital employee disregards established protocol, which consequently places the health or life of a patient at risk or in danger, the "inadvertence exception" is equally inapplicable. See also Franklin v. Whitfield, 534 So.2d 98 (La. Ct. App. 1988) (nurse's repeated violation of employee code of conduct warranted discharge for misconduct).
We are satisfied here that the record amply supports the determination of the Board. Zielenski v. Board of Review, 85 N.J. Super. 46, 54, 203 A.2d 635 (App.Div. 1964). It is undisputed *433 that when Smith was hired the assistant director emphasized to him the necessity of not feeding NPO patients, and that a nurse, acting on a physician's instructions, specifically told Smith earlier in the evening of June 21 that the patient in question was not to be fed. The Board was, therefore, justified in imposing the misconduct disqualification based on Smith's failure to follow established rules and the resultant danger to the patient.
We stress that the conduct here was by a hospital employee and there was a potential for injury to a patient. In this context, we agree with the Board that the misconduct was such as to not only warrant Smith's discharge as an employee, but also to trigger the statutory six-week disqualification. The out-of-state cases cited by Smith in which misconduct disqualifications were not imposed based on one-time incidents are, therefore, not apposite in the circumstances of Smith's type of employment, even though he is not a licensed health care professional. Under N.J.S.A. 43:21-5(b) and as interpreted by Beaunit Mills, supra, the actions which may constitute disqualifying misconduct include "an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability...." The plain language of the statute reveals that it applies not only to recurring episodes of misconduct, but to singular events as well. Hence, as we have noted, the misconduct disqualification may apply even where a single incident is involved. Here, Smith's admitted conduct in bringing food to a pre-operative patient, whose health or life could have been threatened during surgery if the mistake had not been discovered, clearly constitutes disqualifying misconduct at the very least of "a disregard of standards of behavior which the employer has the right to expect of his employee," which warranted disqualification of benefits for six weeks.
We note that the record does not factually support the statement that our dissenting colleague makes about Smith needing the *434 unemployment compensation to live on. In any event, under the statutory scheme that is not the issue. Nothing in the record indicates that any such harsh consequences ensued here by the mere delay of the receipt of the first six weeks of benefits due to Smith's own misconduct, or that other public assistance programs could not be utilized. As noted, Smith ultimately received all that he would have been entitled to if he had not been disqualified for his own misconduct.
Moreover, our review function is somewhat limited in considering decisions of administrative agencies, such as the Board here. We do not ordinarily reverse an agency decision unless it is "arbitrary, capricious or unreasonable," or it is "not supported by substantial credible evidence in the record as a whole." Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 71, 494 A.2d 804 (1985); Gloucester County Welfare Board v. New Jersey Civil Service Commission, 93 N.J. 384, 391, 461 A.2d 575 (1983). Our function in deciding whether an agency decision is supported by substantial credible evidence obliges us to accord deference to the fact finding of the agency. Doering v. Board of Review, 203 N.J. Super. 241, 245, 496 A.2d 720 (App.Div. 1985).
In addition, a presumption of correctness attaches to an administrative agency decision. Gerba v. Public Employees' Retirement System, 83 N.J. 174, 189, 416 A.2d 314 (1980). Settled principles of appellate review indicate that we should reverse an administrative agency's decision only where it can be demonstrated that the decision is arbitrary or capricious, unsupported in the record, or in violation of express or implicit legislative policies. See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-563, 384 A.2d 795 (1978). Merely because an appellate court may have some doubt as to the wisdom of the agency's determination or because the record may support more than one result is not a proper basis for our disturbing the agency's decision. See Henry v. Rahway State Prison, 81 N.J. 571, 579-580, 410 A.2d 686 (1980). As we have stated, there is sufficient credible, competent evidence in the record here to support the *435 Board's conclusions. Thus, we are obliged to uphold those findings. See Clowes v. Terminix International, Inc., 109 N.J. 575, 587, 538 A.2d 794 (1988); Goodman v. London Metals Exchange, Inc., 86 N.J. 19, 28-29, 429 A.2d 341 (1981). The Board's determination that Smith is disqualified for benefits for misconduct for a period of six weeks is neither arbitrary, capricious nor unreasonable. See Worthington v. Fauver, 88 N.J. 183, 204-205, 440 A.2d 1128 (1982).
Affirmed.
BROCHIN, J.A.D., (dissenting).
I respectfully disagree with the majority's opinion. I would hold that petitioner Mario A. Smith was not guilty of "misconduct" within the meaning of N.J.S.A. 43:21-5(b) and I would therefore reverse the decision of the Board of Review which held him ineligible to receive unemployment compensation for six weeks after his dismissal from his position as a hospital orderly.
The Board of Review affirmed on the basis of the decision of the Appeal Tribunal. The substance of the latter decision is:
The claimant's actions in giving a patient a tray of food who was scheduled for surgery, which was the cause of discharge, was a wilful disregard of the employer's best interest, therefore the statutory penalty must be imposed.
When Mr. Smith's infraction was called to his attention, he responded with vulgar language and when his supervisor tried to question him about the matter, he expressed his frustration by saying that he was "fed up" with the way the hospital was treating him. However, insofar as appears from the record, Mr. Smith was neither fired nor disqualified from unemployment compensation because of his responses to inquiries about his conduct. The sole ground for his dismissal and disqualification was his negligent failure to comply with a nurse's oral instructions not to deliver a tray of food to a patient who was about to undergo surgery. In my view, that infraction certainly justified the hospital's firing Mr. Smith, but it was not the kind of conduct for which the legislature *436 intended to withhold benefits from a discharged worker for six weeks when he needs unemployment compensation to live on.
In Demech v. Board of Review, 167 N.J. Super. 35, 38, 400 A.2d 502 (App.Div. 1979), we wrote:
Misconduct is a term undefined in the statute. Judicial attempts to imbue the term with substantive meaning have, however, insisted upon the ingredients of wilfulness, deliberateness and intention if an employee's act is to qualify as misconduct. See Beaunit Mills v. Employment Security Div., 43 N.J. Super. 172, 183 [128 A.2d 20] (App.Div. 1956), certif. denied, 23 N.J. 579 [130 A.2d 89] (1957). Inadvertent or unintentional acts, or simple neglectful conduct not amounting to a wanton disregard of consequences, will not so qualify. Id. at 182, 128 A.2d 20.
In my view, the fact that Mr. Smith was employed by a hospital is not a sufficient reason to depart from that interpretation of the law.
Reported decisions from other jurisdictions which have considered whether hospital personnel were guilty of "misconduct" within the meaning of the disqualifying provisions of unemployment compensation statutes are generally consistent with Demech. For example, in Simmons v. Gerace, 377 So.2d 407 (La. App. 1979), a nurse was fired because of inadequate job performance, errors in judgment, inability to supervise personnel under her direction and personalty characteristics which displeased her supervisors. The incidents which resulted in her dismissal occurred over a period of two or three months. The court held that the nurse was not disqualified from receiving benefits because of "misconduct." The court said:
Poor judgment, inability to cope with situations and occasional incidents of non-deliberate failure to precisely follow established rules and procedures, although giving the employer reason for terminating the employee for the employer's own purposes, does not constitute wilful and deliberate misconduct that will disqualify the employee from receiving unemployment benefits as provided by law. Id. at 410.
In contrast, Kelly v. Whitfield, 546 So.2d 289, 290 (La. App. 1989), describes conduct by a hospital orderly which was properly characterized as disqualifying "misconduct." Kelly was a surgery orderly. A surgery nurse told him to take a patient from the recovery area to the patient's room. The orderly did not do as instructed. Approximately fifteen minutes later, he worked with *437 another employee for an hour preparing a patient for surgery. During that time, the orderly was paged twice but he did not answer. After he completed the task he was working on, he went to a lounge area rather than reporting to the recovery room. The patient whom the orderly had been directed to transport waited in the recovery room for an hour and one-half. Significantly, the orderly had received other warnings from his supervisors about his failure to respond to pages when needed. This conduct was "misconduct" because it was obviously wilfully disobedient.
Ress v. Abbott Northwestern Hospital, Inc., 448 N.W.2d 519 (Minn. 1989), discussed in the majority opinion, does not support the decision in the present case. In Ress, a registered nurse initiated a dangerous medical procedure, which was unauthorized, for a critically ill patient, thereby hastening the patient's death. The nurse refused to follow the contrary instructions of the resident physician. The court referred to testimony that the nurse had a pattern of over-stepping the bounds of his authority over a substantial period of time. Id. at 522-523. Explaining its ruling, the court said:
[I]nitiating an unauthorized treatment and disregarding the orders of a doctor each establish misconduct because such conduct demonstrates a wilful disregard for standards of behavior which an employer has a right to expect of its employee. Id. at 525.
Myers v. Commonwealth, Board of Review, 88 Pa.Cmwlth. 399, 490 A.2d 18 (1985), upon which the majority also rely, is also distinguishable from the present case. In that case, a licensed practical nurse of fourteen years' experience administered medication to a patient without first checking the patient's chart to ascertain that the administration of the medicine was authorized and failed to record that she had given the patient the medicine. The court noted:
The Employer's policy and State regulations prohibit administering medication without proper authorization and require that all medication administered to a patient be logged in on that patient's medical chart. Claimant was aware of the Employer's policy and admitted that she neglected both to check the resident's chart and to log in the administering of the medication. Id. 490 A.2d at 19.
*438 The nurse in Myers claimed her conduct was inadvertent, but it had an element of wilfulness about it which is lacking in the present case. She knew that medicine should not be dispensed without consulting the patient's chart for authorization, but she dispensed it anyway. She knew that the administration of medication to a patient had to be noted in the chart for obvious reasons, but she omitted to make the notation. That conduct constituted the wilful disregard of established procedures. In our case, the established procedure was that some written indication was ordinarily used to signal that a patient was not to receive food because he was awaiting surgery. There was no such sign on the bed of the patient to whom Mr. Smith delivered a tray. Instead Mr. Smith was given oral instructions, and those instructions, which were an exception to the established procedure, slipped his mind. That dereliction may be negligent, but it cannot reasonably be viewed as the wilful disregard of policies established by the employer.
See also Weston v. Gritman Memorial Hospital, 99 Idaho 717, 587 P.2d 1252, 1254-55 (1978) (repeated tardiness, flippancy and lack of interest in her work as a surgery nurse was "misconduct."); Wetzel v. Unemployment Compensation Board of Review, 29 Pa.Cmwlth. 195, 370 A.2d 415, 417 (1977) (A nurse's assistant was disqualified from receiving benefits when she was fired for crocheting on duty and failing to properly stock the examining rooms with supplies after having been warned on several occasions).
The Unemployment Compensation Law is remedial in nature and should be liberally construed. Teichler v. Curtiss-Wright Corp., 24 N.J. 585, 133 A.2d 320 (1957). Depriving a worker of benefits because he has been fired for a negligent omission in the performance of his duties on one occasion serves no useful purpose and is contrary to the remedial spirit of the Law.
I would reverse.
NOTES
[1] This appeal might be considered moot. We were advised at oral argument that Mr. Smith eventually received unemployment compensation benefits for the full six-week period of disqualification at the end of his receipt of all of the unemployment compensation benefits to which he was entitled. Hence, Smith's attorney concedes that whatever the outcome of his appeal, it will not result in any additional benefits or recovery for Smith. He argues, however, that we should nonetheless decide the appeal because of perceived precedential value. The case is of course fact-sensitive. Our decision is limited to the issue before us of disqualifying conduct by an employee in a health-related field, albeit an employee who is not a licensed or registered professional.
[2] This is a medical acronym for the Latin phrase nil per os, meaning nothing by mouth.