787 A.2d 902 (2001)
346 N.J. Super. 242
William J. BOROWINSKI, Plaintiff-Appellant,
v.
BOARD OF REVIEW and Spevack & Cannan, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 2001.
Decided December 21, 2001.
*903 William J. Borowinski, South River, appellant, argued the cause pro se.
Alan C. Stephens, Trenton, argued the cause for respondent, Board of Review (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Mr. Stephens, Deputy Attorney General, on the brief).
Before Judges BAIME, NEWMAN[1] and AXELRAD.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
Claimant, William J. Borowinski, Esquire, appeals from the denial of unemployment benefits from February 8, 2000 through March 18, 2000, based on his discharge for misconduct connected with work as a result of refusing a direct instruction from his senior partner to attend a proceeding in evening municipal court on behalf of one of the firm's clients.
Borowinski worked as an associate for defendant law firm of Spevack & Cannan for approximately ten months before he was terminated on February 9, 2000. He filed a claim for unemployment benefits effective February 27, 2000. The Deputy Director ("Deputy") of the Division of Unemployment and Disability Insurance found Borowinski ineligible for benefits from March 19, 2000 through March 25, 2000 because he missed a telephone interview scheduled that week with the Division. Borowinski was also held ineligible for benefits from February 27, 2000 on the ground that he was unavailable for work. The Deputy also found Borowinski disqualified from unemployment benefits pursuant to N.J.S.A. 43:21-5(a), on the ground that he left work voluntarily without good cause attributable to the work. Borowinski appealed these determinations to the Appeal Tribunal ("Tribunal") and a hearing was held on May 10, 2000.
In a decision mailed on May 25, 2000, the Tribunal reversed the Deputy's determinations and found that Borowinski was eligible for benefits from March 19, 2000 through May 6, 2000, except that it found that he was disqualified for benefits under N.J.S.A. 43:21-5(b) on the ground that he had been discharged from his employment for misconduct connected with the work. Borowinski appealed to the Board of Review, who affirmed the decision of the Tribunal. This appeal followed.
On appeal, Borowinski asserts that he did not engage in misconduct; therefore, the Tribunal's decision was erroneous and unreasonable. He claims that he had been hired specifically to conduct PIP litigation and to fill in on worker's compensation cases when the calendar necessitated his attention but that he was assigned other work, including evening municipal court appearances. According to Borowinski, his work hours substantially exceeded the original agreement between him and his employer. Borowinski claims that he was unsuccessful in his plea to the senior partner, *904 Ronald Spevack, for relief from his work load.
Borowinski was discharged from his employment solely because of his refusal to attend a hearing at Woodbridge Municipal Court on the evening of February 8, 2000, on behalf of one of the firm's clients. When he asked the senior partner if another associate could attend the proceedings because he was tired, he was instructed that failure to appear at court, as assigned, would result in his termination. Borowinski indicated that this was an "unacceptable" assignment and he "packed up his stuff and left." Borowinski was not under medical care at the time and there was no pressing personal obligation or other reason for his refusing to accept the assignment.
The Board of Review, in BR-51391-E, defined "misconduct" under N.J.S.A. 43:21-5(b), as behavior which would "injure the employment relationship." The Tribunal found that Borowinski's refusal to appear, without any substantial reason, "was behavior which he was made aware, would `injure the employment relationship.' " Therefore, as Borowinski was discharged over that incident, his termination occurred for conduct connected with the work.
We agree. Borowinski did not sustain his burden of proof to establish his right to unemployment compensation. Brady v. Board of Review, 152 N.J. 197, 218, 704 A.2d 547 (1997). The New Jersey Unemployment Compensation Law requires that an individual shall be disqualified from unemployment benefits "[f]or the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the five weeks immediately following that week...." N.J.S.A. 43:21-5(b). Employee misconduct has been defined as:
an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.
[Beaunit Mills, Inc. v. Board of Review, 43 N.J.Super. 172, 183, 128 A.2d 20 (App.Div.1956), certif. denied, 23 N.J. 579, 130 A.2d 89 (1957) (quoting Am. J. Soc. Sec., s. 38, at 541 (1943)) ].
During the relevant time, the firm of Spevack & Cannan was comprised of two partners and four associates. Borowinski knew from the outset that his employment as an associate in defendant's law firm, as common in this profession, required more than a 9 to 5 commitment. Borowinski conceded that during the negotiations for employment, he was informed by Spevack that all of the associates were required to work two late nights per week. When one of the associates who was handling the municipal court work left the firm, he inherited the assignment. The February 8 municipal court appearance, located one mile from the law office, in which he was to observe and monitor the testimony of a client the firm was representing in a personal injury case, would have been his second evening assignment during that week. Borowinski did not contradict Spevack's testimony that by attending the two court appearances that week he was not being required to do anything more than the other associates in the firm.
Borowinski acknowledged that he was not working harder than anyone else in the firm, but claimed that since he had worked on Saturday, he should have been excused from the night duty. He also asserted that his actions did not cause potential *905 injury to anyone, since another associate could have monitored the municipal court hearing or the firm could have obtained a transcript of the proceeding.
We disagree. It is irrelevant that Borowinski was assigned to handle municipal court matters while an associate hired after him was not. The bottom line is that associates were required to work a certain number of evenings, whether in the office or elsewhere. This is the real world. Division of the duties is up to the senior partners of the firm, not an associate who has been with the firm less than a year. It was not up to Borowinski to suggest that the firm acquire a transcript of the municipal court proceedings in lieu of his appearance because he was too tired to attend. Besides, the cold record of the transcript does not fully reflect what kind of a witness the client would be in a courtroom, a subject which would, no doubt, be discussed with the senior partner. See, e.g., State v. Padilla, 321 N.J.Super. 96, 113-14, 728 A.2d 279 (App.Div.1999) (holding that deference is given to "credibility findings that are often influenced by matters such as observations of the character and demeanor of the witnesses and common human experience that is not transmitted by a cold record.").
To make matters worse, after Borowinski's request was declined by Spevack and he was given the ultimatum of attending the proceeding or being fired, he dug in his heels and chose the latter. Borowinski must be willing to accept the consequences of his unwarranted behavior. Spevack's directive was within the scope of Borowinski's job duties and he had no good cause to refuse the assignment. Borowinski's behavior constituted insubordination and was in clear disregard of his employer's interests and in clear disregard of the standards of behavior which the employer law firm had the right to expect from its associate. Beaunit Mills, Inc., supra, 43 N.J.Super. 172, 128 A.2d 20.
Affirmed.
NOTES
[1] Judge Newman did not participate in oral argument. However, the parties consented to his participation in the decision.