NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4636-14T3

IN RE N.J.A.C. 12:17-2.1.

APPROVED FOR PUBLICATION

May 1, 2017

APPELLATE DIVISION

Argued March 6, 2017 — Decided May 1, 2017

Before Judges Sabatino, Nugent and Haas.

On appeal from a regulation promulgated by
the New Jersey Department of Labor and
Workforce Development.

Alan H. Schorr argued the cause for
appellants Schorr & Associates, P.C. and
National Employment Lawyers Association —
New Jersey (Schorr & Associates, P.C.,
attorneys; Mr. Schorr, on the briefs).

Alan C. Stephens, Deputy Attorney General,
argued the cause for respondent New Jersey
Department of Labor and Workforce
Development (Christopher S. Porrino,
Attorney General, attorney; Melissa Dutton
Schaffer, Assistant Attorney General, of
counsel; Mr. Stephens, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

The heart of this appeal involves a challenge to the

validity of a regulation, N.J.A.C. 12:17-2.1, adopted in 2015 by

the Department of Labor and Workforce Development ("the

Department").  In that regulation, the Department defines, for

the first time in codified form, the concept of "simple misconduct" by an employee that can limit his or her eligibility for unemployment benefits under the Unemployment Compensation Act ("the Act"), N.J.S.A. 43:21-1 to -56. The Department's adoption of the regulation attempted to respond to concerns this court expressed in Silver v. Board of Review, 430 N.J. Super. 44 (App. Div. 2013), regarding the need for a codified rule that distinguishes "simple misconduct" from the more stringent intermediate concept of "severe misconduct" as defined by the Legislature in a 2010 amendment to N.J.S.A. 43:21-5(b), or the most extreme category of "gross misconduct" defined in the statute.

For the reasons that follow, we invalidate the portion of the challenged regulation defining simple misconduct. We do so because the definition illogically and confusingly mixes in concepts of "negligence" with intent-based concepts such as "willful disregard," "evil design," "wrongful intent," and similar states of mind. The regulation is also flawed because, as explained in this opinion, it defines "simple misconduct" in certain respects as encompassing employee conduct that is at least as extreme or venal — or perhaps more so — than "severe misconduct."

Consequently, the Department's final agency action adopting the definition of simple misconduct within N.J.A.C. 12:17-2.1 must be set aside as arbitrary and capricious.[1] We do so without prejudice to the Department pursuing the adoption of a substitute regulation that cures these defects and conforms with the overall statutory scheme.

I.

A.

The framework and history of the statute and related case law dating back to 1936 is eloquently set forth in Judge Lisa's opinion in Silver, supra, 430 N.J. Super. at 48-56. We incorporate by reference that background here. Some highlights from Silver bear repeating.

To begin with, we detailed in Silver:

> From its inception in 1936 until 2010, New Jersey's Unemployment Compensation Law has provided for disqualification for benefits for employees discharged for "misconduct" or "gross misconduct" connected with the work. N.J.S.A. 43:21-5(b); see L. 1936, c. 270, § 5. The statute defines "gross misconduct" as "an act punishable as a crime of the first, second, third or fourth degree," but it does not define the term "misconduct." Ibid. Appropriately,

---

[1] Appellants also challenge the adoption of N.J.A.C. 12:17-9.1, -9.2, -10.1, -10.3 through -10.9, and -21.2. We see no reason to invalidate those regulations, which do not include the problematic definition of "simple misconduct" discussed in this opinion.

the sanctions for gross misconduct are greater than for simple misconduct. Ibid.

In 2010, the Legislature added a third category in section 5(b), "severe misconduct." L. 2010, c. 37, § 2, eff. July 1, 2010. As we will explain, this was intended as an intermediate form of misconduct, requiring greater culpability than simple misconduct, but less than gross misconduct, and with an intermediate level of disqualification from collecting unemployment benefits. The amendatory provision does not define severe misconduct, but contains a non-exclusive list of examples. See N.J.S.A. 43:21-5(b).[2]

[Silver, supra, 430 N.J. Super. at 48-49.]

As we then explained in Silver, case law has attempted to fill in the gap left by the omission from the Act of an express definition of "simple misconduct":

In 1956, our Supreme Court held that employees were guilty of misconduct for engaging in a work stoppage, in violation of

_____

[2] As Silver explained, under the statute, proven "misconduct" by an employee "results in disqualification for the week that the employee was discharged and seven additional weeks." Supra, 430 N.J. Super. at 49 n.4 (citing N.J.S.A. 43:21-5(b)). By comparison, to be eligible for unemployment benefits after being discharged for "severe misconduct," an employee "must first become reemployed for a period of at least four weeks and earn at least six times the employee's weekly unemployment benefit rate." Ibid. (citing N.J.S.A. 43:21-5(b)). Lastly, the most severe degree of employee behavior under the statute, termed "gross misconduct," results in "no benefits from the account of the employer against whom the gross misconduct occurred and requires at least eight weeks of new employment and wages totaling at least ten times the weekly benefit rate before the claimant can collect unemployment compensation." Ibid. (citing N.J.S.A. 43:21-5(b)).

A-4636-14T3

a no-strike clause in their collective bargaining agreement, which provided that the employer shall immediately discharge any employee in violation of the clause. Boque Elect. Co. v. Bd. of Review, 21 N.J. 431, 433-34 (1956). Without attempting to define "misconduct" broadly, the Court held that a deliberate breach of the collective bargaining agreement could not be deemed a circumstance causing involuntary unemployment, the hazard intended by the Legislature to be protected against, and thus, within the spirit and policy of the unemployment law, it constituted misconduct. Id. at 436.

A few months later, a panel of this court was confronted with a similar situation, in which employees were fired as a result of a work stoppage, but in which the collective bargaining agreement did not contain a no-strike provision. Beaunit Mills, Inc. v. Bd. of Review, 43 N.J. Super. 172, 176-80 (App. Div. 1956), certif. denied, 23 N.J. 579 (1957). Because of that material factual distinction, the panel was required to define "misconduct" within the meaning of the unemployment law. It did so thusly:

[Silver, supra, 430 N.J. Super. at 49.]

We then quoted in Silver from the following instructive passages

found in Beaunit Mills:

What does the statutory [term] misconduct signify? Obviously it cannot mean "mere mistakes, errors in judgment or in the exercise of discretion, or minor but casual or unintentional carelessness or negligence, and similar minor peccadilloes." It cannot mean mere inefficiency, unsatisfactory conduct, failure of performance as the result of inability or incapacity, inadvertence in isolated instances, or good

5                                      A-4636-14T3

faith errors of judgment. <u>Boynton Cab Co. v. Neubeck</u>, 237 <u>Wis.</u> 249, 296 <u>N.W.</u> 636 (1941); Kempfer, <u>Disqualifications for Voluntary Leaving & Misconduct</u>, 55 <u>Yale Law J.</u> 147, 162-166 (1945). In our opinion, the statement in 48 <u>Am. Jur.</u>, Social Security, Unemployment Compensation, etc., § 38 at 541 (1943), suggests the fair intendment of the statute:

[<u>Silver</u>, <u>supra</u>, 430 <u>N.J. Super.</u> at 49-50 (quoting <u>Beaunit Mills</u>, <u>supra</u>, 43 <u>N.J. Super.</u> at 182).]

At this point, as we further noted in <u>Silver</u>, <u>Beaunit Mills</u> quoted this portion of the <u>Am. Jur.</u> treatise:

Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or reoccurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

[<u>Id.</u> at 50 (quoting <u>Beaunit Mills</u>, <u>supra</u>, 43 <u>N.J. Super.</u> at 183 (quoting 48 <u>Am. Jur.</u> §38 at 541)).]

<u>Silver</u> then explained:

Applying those principles, we held [in <u>Beaunit Mills</u>] that, because the employees "were engaged in a concerted activity in good faith for their mutual aid and protection," and with an "absence of evil intent or willful desire to injure the

employer," under all of the circumstances, the employees were not guilty of misconduct connected with the work within the meaning of section 5(b). Id. at 183, 185.

Subsequent case law, although sparse, has made clear that the Beaunit Mills standard for defining misconduct is not limited to a literal and isolated reading of the Am. Jur. passage quoted above. The definition also includes the discussion in Beaunit Mills preceding the Am. Jur. passage we have also quoted.

[Silver, supra, 430 N.J. Super. at 48-50 (emphasis added).]

Our opinion in Silver went on to distill guiding principles from several reported New Jersey cases that have applied Beaunit Mills. In particular, Silver noted, id. at 50, that in Demech v. Board of Review, 167 N.J. Super. 35 (App. Div. 1979), we reversed the Department's denial of benefits to a supermarket employee who had thrown a roast at a co-worker out of frustration and anger caused by the co-worker's inappropriate conduct towards her. "Because the employee's conduct was provoked by the co-employee, was unthinking and spontaneous, and was not intended to and did not cause injury to the co-employee, it did not qualify as misconduct under the Beaunit Mills standard." Silver, supra, 430 N.J. Super. at 51 (citing Demech, supra, 167 N.J. Super. at 38-39). In this regard, Silver quoted this key passage from our opinion in Demech: "All that the statute undertakes to penalize is deliberate and willful

disregard of standards of conduct an employer has a right to expect." Ibid. (emphasis added) (quoting Demech, supra, 167 N.J. Super. at 41).

Silver next addressed our opinion in Smith v. Board of Review, 281 N.J. Super. 426 (App. Div. 1995), a case in which a hospital orderly was discharged for misconduct because he had brought food to a pre-surgery patient, contrary to a nurse's instructions. Silver, supra, 430 N.J. Super. at 51 (citing Smith, supra, 281 N.J. Super. at 428). The majority of this court's panel in Smith upheld the denial of benefits because the orderly's behavior amounted to "a 'willful disregard of the employer's best interest,' thus constituting misconduct." Ibid. (emphasis added) (quoting Smith, supra, 281 N.J. Super. at 430). The third member of the panel dissented in Smith, because he regarded the evidence as insufficient to support a "willful disregard" of the hospital employer's policies, and instead signified "only negligent" conduct. Ibid. (citing Smith, supra, 281 N.J. Super. at 438 (Brochin, J.A.D., dissenting)). We explained in Silver that this split within the Smith panel illustrates "[t]he critical distinction between intentional and deliberate conduct on the one hand and negligent or inadvertent conduct on the other[.]" Ibid. (emphasis added).

As a further example of "the need for deliberate or intentional conduct" to be proven to disqualify an employee for benefits, <u>Silver</u> also discussed <u>Parks v. Board of Review</u>, 405 <u>N.J. Super.</u> 252 (App. Div. 2009). <u>Id.</u> at 51-52. In <u>Parks</u>, the claimant was terminated from his job because of what was deemed to be "excessive absenteeism" after four absences from work. <u>Id.</u> at 52. The record in <u>Parks</u> reflected that all four absences had been occasioned by family illnesses or emergencies. <u>Ibid.</u> (citing <u>Parks</u>, <u>supra</u>, 405 <u>N.J. Super.</u> at 255). Given these circumstances, this court reversed the Department's denial of benefits to Parks, applying the <u>Beaunit Mills</u> standard. <u>Ibid.</u> (citing <u>Parks</u>, <u>supra</u>, 405 <u>N.J. Super.</u> at 254).

As we highlighted in <u>Silver</u>, the panel in <u>Parks</u> observed that disqualification for benefits under the Act "is warranted only when the employee's conduct that resulted in his or her discharge had the ingredients of willfulness, deliberateness and intention." <u>Ibid.</u> (internal citations omitted). "[B]ecause the employee's absences were the result of excusable circumstances, they could not meet the <u>Beaunit Mills</u> standard of <u>deliberate or intentional violations</u> of the employer's rules." <u>Ibid.</u> (emphasis added) (citing <u>Parks</u>, <u>supra</u>, 405 <u>N.J. Super.</u> at 256).

We also briefly noted in <u>Silver</u> two other reported opinions illustrating the concept of "misconduct." Both of those cases

factually involved "<u>intentional</u> acts of insubordination." <u>Ibid.</u> (emphasis added) (citing <u>Borowinski v. Bd. of Review</u>, 346 <u>N.J. Super.</u> 242, 246 (App. Div. 2001), and <u>Broderick v. Bd. of Review</u>, 133 <u>N.J. Super.</u> 30, 31 (App. Div. 1975)).

Continuing to trace the relevant history, <u>Silver</u> then noted that the Department in 2003 promulgated a rule — a predecessor to the 2015 regulation now challenged before us — which attempted to define "misconduct" under the Act. That 2003 rule provided:

> For an act to constitute misconduct, it must be improper, intentional, connected with one's work, malicious, and within the individual's control, and is either a deliberate violation of the employer's rules or a disregard of standards of behavior which the employer has the right to expect of an employee.
>
> [<u>Id.</u> at 52-53 (quoting <u>N.J.A.C.</u> 12:17-10.2(a)).]

As we explained in <u>Silver</u>, "[b]y its plain terms," the 2003 regulation "prescribe[d] a two-prong standard to establish misconduct." <u>Id.</u> at 53. "First, the conduct must be improper, intentional, connected with the work, malicious, <u>and</u> within the employee's control." <u>Ibid.</u> "Second, the conduct must <u>also</u> be either a deliberate violation of the employer's rules or a disregard of the standards of behavior which the employer has the right to expect." <u>Ibid.</u>

10                                                          A-4636-14T3

Silver observed that the test articulated in the 2003 version of the rule "is more stringent than the Am. Jur. passage quoted in Beaunit Mills." Ibid. The test "incorporates the other features of the Beaunit Mills analysis, as further elucidated and reiterated in subsequent case law." Ibid. We stressed in this regard that Beaunit Mills "built upon a foundation laid by the Supreme Court in Boque, the rationale of which hinged upon the incongruity of allowing benefits to 'a group of employees [who] deliberately violate a [clearly important] basic provision of a collective bargaining agreement.'" Ibid. (quoting Boque, supra, 21 N.J. at 436).

The Legislature, with the input of an intervening conditional veto by the Governor, expanded the Act in 2010, inserting the intermediate category of "severe misconduct." Ibid. (citing revised N.J.S.A. 43:21-5(b)). We pointed out in Silver that the statutory amendment provided no definition for severe misconduct, but it did give some illustrative examples. Ibid. Those examples included the following:

> Examples of severe misconduct include, but are not necessarily limited to, the following: repeated violations of an employer's rule or policy, repeated lateness or absences after a written warning by an employer, falsification of records, physical assault or threats that do not constitute gross misconduct as defined in this section, misuse of benefits, misuse of sick time, abuse of leave, theft of company property,

excessive use of intoxicants or drugs on work premises, theft of time, or where the behavior is malicious and deliberate but is not considered gross misconduct as defined in this section.

[Id. at 54 (quoting N.J.S.A. 43:21-5(b), as amended by L. 2010, c. 37, § 2, eff. July 1, 2010).]

As of the time of our opinion in Silver, the Department had not yet adopted new regulations to distinguish simple misconduct from severe misconduct. Ibid. A proposed regulation had been attempted in 2010, but expired without action. A second attempt, which was then underway when Silver was decided, eventually culminated with the 2015 regulation that is now before us.

Pending the final adoption of such new regulations, we reasoned in Silver that it is "fundamental" that the term "misconduct" should have "the same meaning throughout N.J.S.A. 43:21-5(b) and its implementing regulation." Id. at 55. Following that principle, Silver looked to two of the examples of "severe misconduct" set forth in the 2010 statutory amendment, i.e., "repeated violations of an employer's rule or policy" and "repeated lateness or absences after a written warning," which, "if read literally," would describe "conduct that would not necessarily be deliberate, intentional, or

malicious." _Ibid._ However, we eschewed such a rigid and literal interpretation of those examples.

We noted "it is obvious that the Governor and Legislature intended to create severe misconduct as <u>a gap-filler</u> between simple misconduct and gross misconduct." _Ibid._ (emphasis added). We added that "[i]t would make no sense to allow for conduct with a lower level of culpability (such as mere inadvertence or negligence) to qualify as severe misconduct and carry with it a harsher sanction than simple misconduct." _Ibid._ "Such a result would be absurd and clearly contrary to the legislative intent, as expressly set forth in the Governor's Conditional Veto Message, S1813, <u>L.</u> 2010, <u>c.</u> 37." _Ibid._

Summarizing these principles, <u>Silver</u> expressed the following guidance to both the Department and to litigants:

> Therefore, we must construe these two examples of severe misconduct as <u>requiring acts done intentionally, deliberately, and with malice</u>. Because these two examples of severe misconduct require repeated violations, such a construction would render the conduct more egregious than simple misconduct, which could result from a single such violation committed intentionally and with malice. We understand "intentional" and "malicious" as used in the regulation to include <u>deliberate</u> disregard of the employer's rules or policies, or <u>deliberate</u> disregard of the standards of behavior that the employer has the right to expect of an employee. This interpretation comports with the amended statutory scheme, which lists three levels of misconduct, each dependent

A-4636-14T3

upon the employee's relative degree of culpability.

[Id. at 55-56 (emphasis added).]

Silver applied these principles to the facts in that case. The claimant, a teacher at a vocational school, had violated her employer's policy by failing to collect back pens from her students at the end of class. Id. at 47. The teacher had failed to do so six times. Ibid. After being warned by her employer that another such infraction would lead to her termination, she violated the policy a seventh time and was fired. Ibid. The Department disqualified the teacher from collecting benefits, concluding that she had been discharged for severe misconduct. Ibid.

We reversed the agency determination in Silver, concluding that not only did the record fail to support a finding of "severe" misconduct, but also failed to demonstrate "simple" misconduct. Id. at 58. As we wrote in Silver, the hearing examiner made no finding that the teacher had "intentionally or deliberately disregarded the employer's rule for collecting pens after a class[,]" and, indeed, "the record would not support such a finding." Id. at 57. Instead, the claimant adequately explained the circumstances of her failure to account for all of the pens in the classroom environment. Ibid. Her employer "did not refute her assertion that she was trying to comply with

the rule." <u>Ibid.</u> "She was simply unable to do so." <u>Ibid.</u> Consequently, it was "clear" to us in <u>Silver</u> that the claimant's conduct "was a result of negligence or inadvertence, not intentional or deliberate disregard of the employer's rule." <u>Ibid.</u>

We then criticized the Department for its "fragmented approach" in how it applied to <u>Silver</u> the portion of the <u>Beaunit Mills</u> standard contained in the <u>Am. Jur.</u> passage:

> To find misconduct, the agency relied on the portion of the <u>Beaunit Mills</u> standard contained in the <u>Am. Jur.</u> passage. In our view, that fragmented approach has never been what was intended by <u>Beaunit Mills</u>, as described in our subsequent opinions, and reliance on it constituted legal error. Under the correct <u>Beaunit Mills</u> analysis, appellant's conduct did not constitute misconduct because it lacked the requisite elements of wil[l]fulness, deliberateness, intention, and malice. More important, her conduct did not satisfy the agency's own definition of misconduct, which is controlling, and which, in our view, appears to have been designed to express the entire <u>Beaunit Mills</u> standard.
>
> [<u>Id.</u> at 58.]

In reaching this result in <u>Silver</u>, we acknowledged the considerate deference that an administrative agency such as the Department deserves in applying legislative standards within its sphere of responsibility. <u>Ibid.</u> Even so, and giving due respect to an agency's expertise, "ultimately the interpretation

of statutes and regulations is a judicial, not administrative, function and we are not bound by the agency's interpretation." Ibid. (citing Mayflower Secs. Co. v. Bureau of Sec., 64 N.J. 85, 96 (1973)).

B.

Following Silver, the Department promulgated the new regulations that are now before us. The relevant history is as follows.

On August 18, 2014, the Department published proposed amendments related to "Claims Adjudication — Voluntarily Leaving Work and Misconduct[.]" See 46 N.J.R. 1796(a) (Aug. 18, 2014). Appellants, Schorr Associates, P.C. and the National Employment Lawyers Association, submitted written objections to the proposals in a letter dated September 17, 2014. Legal Services of New Jersey also submitted written objections in a letter dated October 17, 2014.

A public hearing on the proposed amendments was held on September 5, 2014. At that hearing, an attorney presented oral objections to the proposals. No one else testified at the hearing.

The proposed amendments were adopted "with non-substantial changes" on April 16, 2015, codified at N.J.A.C. 12:17-2.1, -9.1, -9.2, -10.1, -10.3 through -10.9, and -21.2, and N.J.A.C.

12:17-10.2 was repealed. See 47 N.J.R. 1009(a) (May 18, 2015).
The amendments at the core of the present appeal read as
follows:

**12:17-2.1   Definitions**

The following words and terms, when used in
this chapter, shall have the following
meanings, unless the context clearly
indicates otherwise.

. . . .

"Gross misconduct" means an act punishable
as a crime of the first, second, third, or
fourth degree under the New Jersey Code of
Criminal Justice, N.J.S.A. 2C:1-1 et seq.

. . . .

"Malicious" means when an act is done with
the intent to cause injury or harm to
another or others or when an act is
substantially certain to cause injury or
harm to another or others.

. . . .

"Misconduct" means simple misconduct, severe
misconduct, or gross misconduct.

. . . .

"Severe misconduct" means an act which (1)
constitutes "simple misconduct," as that
term is defined in this section; (2) is both
deliberate and malicious; and (3) is not
"gross misconduct."

1.   Pursuant to N.J.S.A. 43:21-5, as
amended by P.L. 2010, c. 37, such acts
of "severe misconduct" shall include,
but not necessarily be limited to, the
following: repeated violations of an

17                                          A-4636-14T3

employer's rule or policy, repeated lateness or absences after a written warning by an employer, falsification of records, physical assault or threats that do not constitute "gross misconduct," misuse of benefits, misuse of sick time, abuse of leave, theft of company property, excessive use of intoxicants or drugs on work premises, or theft of time; <u>except that in order for any such act to constitute "severe misconduct," it must also (1) constitute "simple misconduct"; and (2) be both deliberate and malicious</u>.

"<u>Simple misconduct</u>" means an act which is neither "severe misconduct" nor "gross misconduct" and which is an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior that the employer has the right to expect of his or her employee, <u>or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer</u>. Nothing contained within this definition should be construed to interfere with the exercise of rights protected under the National Labor Relations Act or the New Jersey Employer-Employee Relations Act.

[<u>N.J.A.C.</u> 12:17-2.1 (emphasis added).]

Appellants timely appealed the Department's final agency decision promulgating these new regulations. Fundamentally, they contend that the regulations are inconsistent with the policies of the Act in many respects, and are arbitrary and capricious.

Most centrally, appellants contend that the inclusion of "negligence" concepts within the definition of simple misconduct in N.J.A.C. 12:17-2.1 is contrary to case law, including Silver, Beaunit Mills, and the overall statutory scheme. They assert that the concept of what amounts to "intentional negligence" encompassed within the new regulation is an oxymoron, and incapable of sensible or fair application. They further urge that the regulatory definition of misconduct should not eliminate a predicate ingredient of malice. To support these various arguments, appellants point to several recent unemployment cases in which, in the their view, agency personnel inappropriately denied, at least initially, benefits to claimants whose conduct was no more culpable than simple negligence.

The Department counters that the new regulations are presumptively valid, consistent with the terms of the statute and case law, and neither arbitrary nor capricious. It urges that we uphold the regulations without any modification.

## II.

We start our consideration of the merits with a recognition of the principles of appellate judicial review of administrative agency decisions we previously applied in Silver, and likewise apply here. It is well-established that, when reviewing an

19                                                    A-4636-14T3

agency's adoption of a regulation on appeal, the scope of review is "both narrow and deferential." In re Adoption of N.J.A.C. 5:96, 215 N.J. 578, 629 (2013) (internal citations omitted). Because an agency has been delegated certain powers by the Legislature, "[t]he grant of authority . . . should be liberally construed to enable the agency to accomplish the Legislature's goals." Ibid. (quoting Van Dalen v. Washington Twp., 120 N.J. 234, 245 (1990)). An agency action within that delegation of power is therefore "accorded a strong presumption of validity and reasonableness." Ibid. (quoting Van Dalen, supra, 120 N.J. at 244-45).

That said, an agency may not adopt a regulation that "extend[s] a statute to give it a greater effect than its language permits." GE Solid State v. Dir., Div. of Taxation, 132 N.J. 298, 306 (1993) (citing Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528 (1964) and Serv. Armament Co. v. Hyland, 70 N.J. 550, 563 (1976)). An appellate court's review of a regulation is therefore essentially limited to determining whether:

> (1) the action offends the State or Federal Constitution; (2) the action violates express or implied legislative policies; (3) the record contains substantial evidence to support the agency's findings; and (4) in applying the legislative policy to the facts, the agency erred in reaching a conclusion that could not reasonably have

been made on a showing of the relevant factors.

[In re N.J.A.C. 12:17-9.6 ex. rel. State Dep't of Labor, 395 N.J. Super. 394, 407 (App. Div. 2007) (internal citations omitted).]

Another core principle that guides our review here is the notion that codified provisions, whether they be enacted within a statute, an administrative regulation, or an ordinance, must be interpreted sensibly in a manner that avoids reaching absurd results. See US Bank, N.A. v. Hough, 210 N.J. 187, 202 (2012). Although duly-enacted regulations start off with a presumption of validity, courts are empowered to set them aside where they are shown to be "unreasonable or irrational[.]" Bergen Pines Cty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 477 (1984). Such flaws may be evident where the wording of a provision is internally inconsistent, impermissibly vague, or plainly in conflict with overarching law, which, in the case of a regulation, could be a Constitution or an enabling statute. See, e.g., In re N.J.A.C. 7:1B-1.1 Et Seq., 431 N.J. Super. 100, 117 (App. Div. 2013); N.J. Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 82 (1980).

The public is entitled to be guided by regulations that are clear, understandable, and reasonably predictable in uniform application. That objective is particularly essential in the

sphere of unemployment compensation cases, which, as appellants emphasize, are most commonly pursued by self-represented laypersons who have been denied benefits by an unemployment claims Deputy or Tribunal.

Substantively, we also must be cognizant of the fundamental conceptual difference between conduct that is "intentional" or "deliberate" in nature from behavior that is "negligent." "Negligence" has been defined in our law as "the failure to exercise 'that degree of care for the safety of others, which a person of ordinary prudence would exercise under similar circumstances.'" Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 363-64 (2016) (quoting Model Jury Charge (Civil), 5.10A, "Negligence and Ordinary Care — General" (2009)). By contrast, an "intentional" or "deliberate" act connotes "conduct decidedly more culpable[.]" Mahoney v. Carus Chem. Co., Inc., 102 N.J. 564, 577 (1986).

As this court repeatedly pointed out in Silver, supra, 430 N.J. Super. at 51, 57, 58, negligence and intentional or deliberate wrongdoing are qualitatively different states of mind and degrees of behavior. Within our State's statutory scheme for unemployment compensation and decades of case law applying it, the basic notion of "simple misconduct" requires "elements of wil[l]fulness, deliberateness, intention, and malice." Id.

at 58.  An employee's mere "negligence" or "inadvertence" does not suffice to comprise misconduct under the Act.  Id. at 57.

That said, the regulations the Department adopted in 2015 fail to make this critical distinction between simple negligence, on the one hand, and intentional, deliberate, or malicious conduct, on the other hand, at least not consistently. Unfortunately, the literal wording of N.J.A.C. 12:17-2.1 defining and utilizing the term "simple misconduct" confusingly blends concepts of negligence with intentional wrongdoing that cannot be sensibly understood or harmonized.  Several aspects of the new rule illustrate this problem.

As we have already noted, the definition of "simple misconduct," as adopted in the new regulation, encompasses the following:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior that the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.
>
> [N.J.A.C. 12:17-2.1 (emphasis added).]

Unpacking this prose, even the most careful reader could be readily confused on how the term "negligence" can be sensibly

equated with "intentional" conduct.   Or with "a wanton <u>or</u> willful disregard" of an employer's interest.   Or "evil design." Or "an intentional and substantial disregard" of an employer's interest or of the employee's duties.   Such terms conveying a person's conscious and purposeful aim to engage in wrongful conduct are not linguistically or doctrinally consistent with the merely careless forms of conduct that the law routinely defines as negligent.

We are mindful that the regulation includes this qualifying phrase after the word "negligence":   "in such degree or recurrence as to manifest[,]" and then enumerates various forms of intentionally-based wrongdoing.   It is not clear from this wording what is meant to "manifest" such a more extreme revision of negligence, by an unspecified level of "degree or recurrence."

We suspect that what the drafters may have had in mind, but do not say so precisely in the words of the regulation, was to embrace negligence that is so severe in extent that it is tantamount in culpability to what our case law in other contexts sometimes refers to as "gross negligence."   In fact, the Department's brief expressly likens the negligence language within the new regulation to gross negligence.

24                                        A-4636-14T3

Black's Law Dictionary defines "gross negligence" as "[a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party[.]" Black's Law Dictionary, 1197 (10th ed. 2014). The term "gross negligence" has also at times been treated as synonymous with "reckless negligence, wanton negligence, willful negligence, willful and wanton negligence, [and] willful and wanton misconduct[.]" Ibid.

Although rigid classifications of the "degrees of negligence have been abandoned" in our case law, the term "gross negligence" is nonetheless still used when referring to "the upper reaches of negligent conduct." Stelluti v. Casapenn Enters., LLC, 408 N.J. Super. 435, 457 n.6 (App. Div. 2009) (quoting Parks v. Pep Boys, 282 N.J. Super. 1, 17 n.6 (App. Div. 1995)), aff'd, 203 N.J. 286 (2010). As the Supreme Court recently noted, under the applicable New Jersey Civil Model Jury Charges, the concept of gross negligence "does not require willful or wanton misconduct or recklessness." Steinberg, supra, 226 N.J. at 364 (citing Model Jury Charge (Civil), 5.12, "Gross Negligence" (2009)).

Perhaps these problems of clarity and interpretation could be solved if the regulation were revised to eliminate this confusing and internally contradictory language, and instead set

forth a clearer definition of "misconduct" that incorporated the concept of "gross negligence." Alternatively, the regulation also might provide that either "gross negligence" or "intentional misconduct" can suffice. Of course, such revised wording is not before us, and we will not render an advisory opinion here on the subject. See De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (noting that our courts refrain from rendering advisory opinions or exercising jurisdiction "in the abstract"); see also G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009) (instructing that courts should not "answer abstract questions or give advisory opinions"); Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 108 (1971) (same).

In particular, a challenger might argue that gross negligence falls short of the levels of culpability delineated in our prior case law construing the Act, although no prior case has squarely addressed the question. What we can and must say is that Silver, which remains binding precedent and which we reaffirm here, clearly requires that the Act be construed and applied so as to not deprive claimants of unemployment benefits based on actions or inactions that amount to nothing more than simple negligence. The statute is designed to, and must be, "liberally construed in favor of the allowance of benefits." Meaney v. Bd. of Review & Atlas Floral Decorators, 151 N.J.

Super. 295, 298 (App. Div. 1977) (internal citations omitted). Although ineligible claimants who have engaged in deliberate misconduct must be turned away, see Yardville Supply Co. v. Bd. of Review, Dep't of Labor, 114 N.J. 371, 375 (1989), deserving claimants who have only been merely negligent should not be deprived of compensation.

Despite the contrary assertion of appellants, we do not ascribe any improper policy motives to the Department in adopting the present regulation as part of some concerted "scheme" to deprive worthy unemployment claimants of their just benefits. In fact, we appreciate that the self-contradictory and confusing terminology that mixes "negligence" concepts with "intentional wrong" concepts originates with the 1943 Am. Jur. treatise passage itself, which was quoted in Beaunit Mills.

But, importantly, as our opinion in Silver recognized, the court in Beaunit Mills prefaced its citation to the Am. Jur. treatise with an important gloss. "The test [of compensability used under our statute] is more stringent than the Am. Jur. passage quoted in Beaunit Mills. It incorporates the other features of the Beaunit Mills analysis, as further elucidated and reiterated in subsequent case law." Silver, supra, 430 N.J. Super. at 53. The test "buil[ds] upon a foundation laid down by the Supreme Court in Bogue, the rationale of which hinged upon

the incongruity of allowing benefits to 'a group of employees [who] <u>deliberately</u> violate a . . . basic provision of a collective bargaining agreement.'" <u>Ibid.</u> (emphasis in original) (quoting <u>Boque</u>, <u>supra</u>, 21 <u>N.J.</u> at 436). In quoting the <u>Am. Jur.</u> passage without the important gloss, the Department's regulation fails to include this key concept.

The present edition of the <u>Am. Jur.</u> treatise, issued in 2005, continues to read substantially the same as the 1943 version, repeating the same ambiguous phrase "negligence of such degree or recurrence as to manifest wrongful intent or evil design," and so on. 76 <u>Am. Jur.</u>, Unemployment Comp., § 68 at 807 (2005). We are also aware that the unemployment laws of several other states continue to make use of the <u>Am. Jur.</u> phraseology, or comparable language.[3] Yet, as far as our research has revealed, none of those states have the kind of three-tiered gross misconduct/severe misconduct/simple misconduct structure that our New Jersey statute has utilized since the 2010 legislative amendment. Now that we have in our state such a three-tiered statutory gradation, it does not appear logical to "snap in" the <u>Am. Jur.</u> definition into the

---

[3] <u>See, e.g.</u>, <u>Rossini v. Dir., Ark. Empl. Sec. Dep't</u>, 101 <u>S.W.</u>3d 266 (Ark. Ct. App. 2003); <u>Young v. Miss. Empl. Sec. Comm'n</u>, 754 <u>So.</u> 2d 464 (Miss. 1999); <u>Stalcup v. Job Serv. N.D.</u>, 592 <u>N.W.</u>2d 549 (N.D. 1999); <u>Kelly v. Unemployment Comp. Bd. of Review</u>, 747 <u>A.</u>2d 436 (Pa. Commw. Ct. 2000); <u>Dailey v. Bd. of Review, W. Va. Bureau of Empl. Programs</u>, 589 <u>S.E.</u>2d 797 (W. Va. 2003).

regulation indiscriminately.[4]  Instead, doing so appears to have caused confusion, and allegedly uneven and unfair application.

As an independent basis for concern, the present regulatory definitions seem to treat as "simple misconduct" certain kinds of employee behavior that fall within the statutory definition of higher-level "severe misconduct," and vice-versa.  For instance, it is difficult to comprehend how an employee who has acted with "evil design" or with "wrongful intent" is only guilty of simple misconduct and not severe misconduct.

The regulatory definition of severe misconduct attempts to address this overlap by requiring proof that the employee's conduct not only be "simple misconduct" but also "both deliberate and malicious."  The term "deliberate" is not defined in the regulations.  However, the term "malicious" is defined as follows:

> "Malicious" means when an act is done with the intent to cause injury or harm to another or others or when an act is substantially certain to cause injury or harm to another or others.
>
> [N.J.A.C. 12:17-2.1.]

---

[4] We recognize that a regulation containing both the Am. Jur. passage and the Beaunit Mills prefatory gloss would be unwieldy. Hence, we offer our suggestion that the Department create from scratch a new regulation that clearly and concisely expresses the appropriate concepts.

This definition does not resolve the overlap and definitional problem. In fact, the solution appears to be circular. In order to comprise the higher-grade of "severe misconduct," the employee's behavior must be "deliberate" and "intended," or "substantially certain" to cause injury or harm to others. That sounds very much like simple misconduct committed with "wrongful intent" or "evil design." If the harm (or expectancy of harm) ingredient is what makes the difference between "simple" and "severe" misconduct, the regulation surely could express that line of demarcation more clearly and explicitly.

In sum, with all due deference to (and, indeed, appreciation for) the Department's efforts to enact a clarifying regulation defining "simple misconduct," the result of that process has led to a linguistic morass, one that cannot be readily or sensibly understood and applied. Although we have pondered whether to perform "judicial surgery" on the wording of the regulation ourselves to solve these problems, we consider it more appropriate for the Department to go back to the proverbial drawing board and develop a clearer and more cogent alternative itself, considering the input of appellants and any other commentators.

The portion of N.J.A.C. 12:17-2.1 defining "simple misconduct" is accordingly set aside as arbitrary and

capricious, without prejudice to the Department adopting a substitute provision within no later than 180 days.  In the meantime, to avoid disruption in the statewide administration of the unemployment benefits program, we stay our decision, <u>sua sponte</u>, for that same 180-day period to enable the Department to take appropriate corrective action or, alternatively, pursue further review in the Supreme Court.  The remainder of the new regulations that do not concern the definition remain unaltered.

Reversed.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION