**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5118-15T4
     A-5278-15T4
     A-1927-17T3

PAUL B. DALNOKY,

  Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR, and
ABM JANITORIAL SERVICES
MID-ATLANTIC, INC.,

  Respondents.

_____

PAUL B. DALNOKY,

  Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR, and
ATLANTIC COMMUNITY COLLEGE,
GALLOWAY TOWNSHIP BOARD OF
EDUCATION, and ABM JANITORIAL
SERVICES MID-ATLANTIC, INC.,

Respondents.

_____

PAUL B. DALNOKY,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR, and
GALLOWAY TOWNSHIP BOARD
OF EDUCATION,

     Respondents.

_____

        Submitted February 6, 2019 – Decided February 21, 2019

        Before Judges Reisner and Mawla.

        On appeal from the Board of Review, Department of Labor and Workforce Development, Docket Nos. 072,646, 064,605, and 129,204.

        Paul B. Dalnoky, appellant pro se.

        Gurbir S. Grewal, Attorney General, attorney for respondent, Board of Review in A-5118-15 and A-5278-15 (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Peter H. Jenkins, Deputy Attorney General, on the briefs).

        Gurbir S. Grewal, Attorney General, attorney for respondent, Board of Review in A-1927-17 (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Aaron J. Creuz, Deputy Attorney General, on the brief).

Respondents ABM Janitorial Services Mid-Atlantic, Inc., Atlantic Community College, and Galloway Township Board of Education have not filed briefs.

PER CURIAM

In these consolidated matters, appellant Paul B. Dalnoky appeals from decisions by the Board of Review, dated May 23 and June 15, 2016, and December 1, 2017, denying him unemployment benefits.  We affirm.

The following facts are taken from the record.

A-5118-15

On May 27, 2014, Dalnoky began full-time employment as a district ambassador for ABM Janitorial Services Mid-Atlantic, Inc. (ABM) in Atlantic City.  In August 2014, his manager received a photograph by text from an unknown number depicting Dalnoky lying down on the wall of the Korean War Memorial.  The manager recognized the photograph was taken in Dalnoky's assigned work shift area, and concluded it was Dalnoky based on the uniform, complexion, and stature of the person in the photograph.

As a result, pursuant to ABM's code of conduct, Dalnoky was placed on investigative suspension.  The code of conduct was set forth in the ABM employee policy handbook, which forbade "[w]asting time, loitering, sleeping during work hours, or leaving the workplace for any reason without

authorization" and stated an employee could be immediately discharged for such infractions. Dalnoky signed for and received the employee policy handbook before commencing his employment with ABM.

As a result of ABM's investigation, Dalnoky's employment was terminated. He filed a claim for unemployment benefits. A deputy from the New Jersey Department of Labor, Division of Unemployment (Division) mailed Dalnoky a determination that he was disqualified for unemployment benefits because he was discharged due to misconduct connected to his work. Dalnoky appealed the determination to the Tribunal.

The Tribunal conducted a three-day hearing. Dalnoky testified and admitted he was lying on the wall of the Korean War Memorial, but claimed he was resting his back due to a previous back injury. Dalnoky's manager also testified and cited ABM's code of conduct, which allowed him to terminate Dalnoky without warning for wasting time, loitering, or sleeping during work hours. The manager also noted the Korean War Memorial was a public area, which was not an approved break area for district ambassadors.

The Tribunal affirmed the deputy's findings. It concluded Dalnoky's "action of laying down on the Korean War Memorial was the cause of his discharge," which "violated company policy" and "disqualified [him] for

benefits . . . in accordance with N.J.S.A. 43:21-5(b) and N.J.A.C. 12:17-10.6."[1]

Dalnoky appealed and the Board affirmed.

A-5278-15

Dalnoky was employed as a tutor by Atlantic Cape Community College (ACCC)[2] from approximately September 2013, through August 28, 2014. He was then employed by Galloway Township Board of Education (Galloway), during the 2014-2015 school year, as a per diem substitute teacher from March 19 to June 19, 2015. He remained on the substitute teacher list with Galloway through the 2015-2016 school year, which made him eligible to work for Galloway upon its request. Dalnoky was also on the substitute teacher list for the Atlantic City Board of Education during the 2015-2016 school year.

Dalnoky filed for unemployment benefits on May 24, 2015. The Division disqualified him for benefits from June 21, 2015, pursuant to N.J.S.A. 43:21-4(g), because he was employed with an educational institution and had a

---

[1] The Tribunal's decision cites "N.J.A.C. 12:17-10.6 Discharge or suspension for insubordinate violation of an employer's rule." The regulation was re-codified from N.J.A.C. 12:17-10.6 to N.J.A.C. 12:17-10.5, effective May 18, 2015.

[2] Although the record and the caption reflect varying recitations, we utilize Atlantic Cape Community College or ACCC to reflect the institution's official name.

reasonable assurance to perform educational services at an educational institution in the next school year. Dalnoky appealed.

The Tribunal conducted a hearing and determined Dalnoky was eligible for benefits from June 21, to September 5, 2015. The Tribunal found Dalnoky was employed by ACCC during the 2014 base year and was not offered employment by ACCC in the same or similar capacity for the semester beginning in Fall 2014, or any semester afterwards. The Tribunal also found Dalnoky was employed by Galloway in the school year ending in June 2015, and this employment "commenced outside of the base year and was substantially different from the work he performed for [ACCC]." Thus, the Tribunal concluded that "[a]lthough [Dalnoky] was employed by an educational institution in the school year ending [in June 2015,] and remained on the substitute list for the subsequent school year, no period of ineligibility applie[d] as the base year employment did not include work in that capacity or for a similar employer."

The appeal was reopened by the Tribunal, on its own motion, in response to an email communication from a representative from Pleasantville Department of Labor and Work Development (PDL&WD). Dalnoky and representatives of

6

ACCC participated in a telephonic hearing, after which the Tribunal issued a decision denying Dalnoky benefits.

The Tribunal found Dalnoky had worked as a tutor for an educational institution, ACCC, from September 2013 until August 28, 2014, and was discharged for not abiding by the work schedule and submitting inaccurate timesheets. Pursuant to N.J.S.A. 43:21-4(g)(1), the Tribunal also concluded Dalnoky was employed by Galloway during the 2014-2015 school year and had a reasonable assurance of reemployment with an educational institution for the 2015-2016 school year because he remained on Galloway's substitute list. Therefore, he was ineligible for benefits from June 21 to September 5, 2015. Dalnoky appealed the Tribunal's decision and the Board affirmed.

A-1927-17

Dalnoky was employed by Galloway as a per diem substitute teacher from March 19, 2015 until May 2017. He filed a claim for unemployment benefits as of July 2, 2017. Pursuant to N.J.S.A. 43:21-4(g)(1), the Division notified Dalnoky he was ineligible for benefits from June 18 through September 9, 2017 because he was employed by an educational institution to perform educational services and had a reasonable assurance of work in a subsequent academic year.

Dalnoky appealed and the Tribunal held a hearing. Dalnoky testified he was employed as a per diem substitute teacher by the following boards of education: Galloway, Ocean City, Somers Point, Linwood, Pleasantville, and Atlantic County. Dalnoky testified he was not actively seeking work with Galloway during the 2016-2017 academic year because he was receiving regular work as a substitute teacher for Atlantic County and Pleasantville through a teacher staffing company, which ended in May 2017.

Dalnoky worked three days for Galloway during the 2016-2017 academic year. He testified Galloway sent him a notice inquiring whether he wished to be included on the substitute teacher list for the following academic year and he advised them he was on the substitute teacher list for the 2017-2018 academic year. He also testified he was on the substitute teacher list for the Ocean City and Egg Harbor Township boards of education.

The Tribunal found Dalnoky ineligible for unemployment benefits because he was employed by an educational institution performing educational services and had a reasonable assurance of employment during the 2017-2018 academic year in multiple school districts, including Galloway. The Board affirmed the Tribunal's decision.

## I.

The scope of our review of an administrative agency's final determination is strictly limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable, or inconsistent with the applicable law. Ibid.; In re Warren, 117 N.J. 295, 296-97 (1989). "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)). Thus, "[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the fact finder could reasonably so conclude upon the proofs." Ibid. (alteration in original) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). We "must . . . give due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997) (citation omitted).

## A.

In A-5118-15, Dalnoky contends the benefits received in relation to his termination from ABM should not have been included with the 2014 base year

because he applied for unemployment benefits on May 25, 2014, but did not begin work with ABM until May 27, 2014. Dalnoky asserts the findings of the Tribunal were erroneous because ABM "defaulted" by not appearing at the initial hearing. He also argues the evidence adduced at the hearing did not support a finding of good cause to fire him.

The amount of benefits an individual receives pursuant to an application for unemployment benefits is calculated based on the wages earned by the applicant during his "base year." N.J.S.A. 43:21-19(c)(1). The "base year" is defined as "the first four of the last five completed calendar quarters immediately preceding an individual's benefit year" and the "benefit year" in an application for unemployment benefits "begin[s] with the day on . . . which [an applicant] first files a valid claim[.]" N.J.S.A. 43:21-19(c)(1), (d). Thus, the base year to determine benefits for Dalnoky during his benefit year in this appeal would be calculated before he filed a claim on May 25, 2014, and would not include wages he earned from ABM. Regardless, Dalnoky received unemployment benefits from August 17, through October 11, 2014, which is the basis of the determination disqualifying him for benefits.

"The Unemployment Compensation Law (UCL), N.J.S.A. 43:21–1 [to -24.4], provides income security through the payment of unemployment

insurance benefits to qualified individuals who are involuntarily unemployed." N.J.A.C. 12:17-1.1(a). The adjudication of claims for misconduct connected with the work is specifically governed by N.J.A.C. 12:17-10.1 to -10.8.

At the time of Dalnoky's termination from ABM, the UCL stated an individual shall be disqualified for unemployment benefits "[f]or the week in which the individual has been suspended or discharged for misconduct connected with the work, and for the seven weeks which immediately follow that week, as determined in each case." N.J.S.A. 43:21-5(b) (2014) (current version at N.J.S.A. 43:21-5(b) (2018)). The applicable regulation stated: "For an act to constitute misconduct, it must be improper, intentional, connected with one's work, malicious, and within the individual's control, and is either a deliberate violation of the employer's rules or a disregard of standards of behavior which the employer has the right to expect of an employee." N.J.A.C. 12:17-10.2 (2014) (amended 2015) (current version at N.J.A.C. 12:17-2.1).

In Silver v. Bd. of Review, 430 N.J. Super. 44 (App. Div. 2013), we traced the history of statutory misconduct disqualification, and attempts by the Department to craft regulations in response to changes in the statute. We noted the Legislature amended N.J.S.A. 43:21-5(b) and added "severe misconduct" as an intermediate level of misconduct between simple and gross misconduct. Id.

at 53. However, because the Department had not yet adopted regulations defining the term, we held "[u]ntil any new definition is promulgated by rule, the definition contained in the present version of N.J.A.C. 12:17-10.2(a) controls, except to the extent it is superseded by the 2010 amendment of the statute." Id. at 55.

Subsequently, we set aside the regulatory definition of simple misconduct because

> the regulations the Department adopted in 2015 fail to make this critical distinction between simple negligence, on the one hand, and intentional, deliberate, or malicious conduct, on the other hand, at least not consistently. Unfortunately, the literal wording of N.J.A.C. 12:17-2.1 defining and utilizing the term "simple misconduct" confusingly blends concepts of negligence with intentional wrongdoing that cannot be sensibly understood or harmonized.
>
> [In re N.J.A.C. 12:17-2.1, 450 N.J. Super. 152, 168 (App. Div. 2017).]

No new regulations have since been adopted. Therefore, for purposes of this appeal, Silver instructs that simple misconduct requires "wil[l]fulness, deliberateness, intention, and malice." 430 N.J. Super. at 58. We have held "'intention[]' and 'malic[e]' as used in the regulation . . . include deliberate disregard of the employer's rules or policies, or deliberate disregard of the standards of behavior that the employer has the right to expect of an employee."

In re N.J.A.C. 12:17-2.1, 450 N.J. Super. at 162 (emphasis in original) (quoting Silver, 430 N.J. Super. at 56).

Discharge or suspension for insubordination or violation of an employer's rule is defined as follows:

> An individual shall be considered to have been discharged for an act of misconduct where it is established that he or she has committed an act of misconduct and as defined in N.J.A.C. 12:17-10.2 and met one of the following:
>
> 1. Refused without good cause to comply with instructions from the employer, which were lawful, reasonable, and did not require the individual to perform services beyond the scope of his or her customary job duties;
>
> 2. Acted beyond the expressed or implied authority granted to the individual by the employer; or
>
> 3. Violated a reasonable rule of the employer which the individual knew or should have known was in effect.
>
> [N.J.A.C. 12:17-10.6(a) (2014) (amended 2015) (current version at N.J.A.C. 12:17-10.5(a)).]

Here, the Tribunal found Dalnoky was lying on the Korean War Memorial in public view, which was a violation of ABM's company policy and cause for his discharge. Pursuant to N.J.A.C. 12:17-10.6(a), Dalnoky's violation constituted misconduct connected with the work and grounds to disqualify him

13

for unemployment benefits. Therefore, the Board's decision to affirm the Tribunal's factual findings and decision was not arbitrary, capricious, or unreasonable. To the extent we have not addressed the other claims raised on this appeal it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D) and (E).

B.

In A-5278-15, Dalnoky argues it was an error to reopen the Tribunal's initial decision based upon a request from the PDL&WD. He also argues the Tribunal examiner misinterpreted N.J.S.A. 43:21-4(g) and the statute unfairly burdens substitute teachers. In A-1927-17, Dalnoky argues N.J.S.A. 43:21-4 requires a finding of a reasonable assurance of returning to work at an educational institution and the Tribunal's findings do not support the conclusion he had a reasonable assurance of employment for the 2017-2018 school year. We are unpersuaded by these arguments.

N.J.A.C. 1:12-18.4 states:

> (a) In the absence of jurisdiction by the Board of Review, a party to a benefit claim may file a request for reopening of an Appeal Tribunal decision if:
>
> 1. The party's appeal to the Board of Review was dismissed as late without good cause;

14

2. The party did not appear at the Appeal Tribunal hearing for good cause shown;

3. The party is seeking to amend the Appeal Tribunal decision due to a mistake in law or computation thereby affecting the legal conclusion of the Appeal Tribunal; or

4. The party has new or additional evidence.

(b) Such request shall be submitted as promptly as possible, shall not act as a stay of proceedings in the case, and shall not suspend the payment of benefits. Additional time for such request may be granted where fraud, newly discovered evidence, or other good cause is shown.

(c) The Appeal Tribunal shall notify all interested parties of the request for reopening. The parties shall have 10 days to submit written arguments. After reviewing the matter, the Appeal Tribunal will schedule a hearing, issue an amended decision, or deny the request in an order explaining the reasons. All interested parties will be notified by the Appeal Tribunal of any subsequent decision or order which shall contain appeal rights to the Board of Review.

Furthermore, "[e]very decision of an appeal tribunal shall, immediately upon issuance, be transmitted to the executive secretary of the Board . . . for consideration. The Board shall forthwith determine whether or not the decision shall be allowed to stand." N.J.A.C. 1:12-18.1(c).

Dalnoky's contention the PDL&WD representative did not qualify as an interested party, and thus could not request the Tribunal re-open its initial decision, lacks merit. The Board has broad discretion to review and determine whether a Tribunal's decision should be upheld.

Furthermore, the facts in both A-5278-15 and A-1927-17, demonstrate Dalnoky had a reasonable assurance of performing educational services at an educational institution in the following academic year. N.J.S.A. 43:21-4(g)(1) states:

> benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years (or terms) and <u>if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms</u>[.]
>
> [(Emphasis added).]

N.J.A.C. 12:17-12.4(a) states "[a]n employee of an educational institution shall be ineligible for benefits for any week that begins during the period between academic years or terms and during vacation periods and holiday recesses, if the employee has reasonable assurance of returning to work in any

16

such capacity[.]"  A reasonable assurance of returning to work means "a written, oral, or other implied agreement that the employee shall perform services in any such capacity during the next academic year, term, or remainder of a term." N.J.A.C. 12:17-12.4(a)(1).  "An employee who is employed for all or part of a term in a day-to-day substitute position has reasonable assurance of recall if he or she is placed on a substitute list for the next academic year or term."  N.J.A.C. 12:17-12.4(a)(3).

In both appeals, Dalnoky testified he was placed on a substitute teacher list for the subsequent academic year for numerous school districts.  Therefore, pursuant to the aforementioned regulations, he had a reasonable assurance of returning to work at an educational institution to perform educational services by virtue of his placement on the substitute list.

Finally, we have previously rejected the claim that substitute teachers are unfairly burdened by N.J.S.A. 43:21-4.  Indeed, we have stated:

> We discern no merit in claimant's further argument that because substitute teachers may be ineligible for unemployment benefits during the summer recess they are denied equal protection of the law. Denial of benefits in such cases "conform[s] with the Legislature's intent not to subsidize the vacation periods of those who know well in advance that they may be laid off for certain specified periods."

17

> [Patrick v. Bd. of Review, 171 N.J. Super. 424, 427 (App. Div. 1979) (alteration in orginal) (Davis v. Unemployment Comp. Bd. Comm'n, 39 Pa. Comwlth. 146, 148 (Comwlth. Ct. 1978)).]

For these reasons, we reject Dalnoky's claim the statute disproportionately burdens substitute teachers.

Affirmed as to A-5118-15, A-5278-15, and A-1927-17.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION